THE UNITED STATES DISTRICT COURT
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION
CASE NO. 15-CV-00595

RECEIVED
IN CLERK'S OFFICE

AUG 1 2 2015

U. S. DISTRICT COURT
MID. DIST. TENN.

**COREY LEA   PRO SE PLAINTIFF**

**V.**

**MARKETSTREET EQUITIES INVESTMENT COMPANY**
**STEVE TURNER - CEO OF FARMERS NATIONAL BANK**
**THE UNITED STATES DEPARTMENT OF AGRICULTURE**
**FARMERS NATIONAL BANK**
**WARREN COUNTY KENTUCKY**
**LARRY HINTON (INDIVIDUAL CAPACITY)**
**DAVID BRODERICK (INDIVIDUAL CAPACITY AND OFFICIAL)**
**DAN HARBISON (INDIVIDUAL CAPACITY)**

## AMENDED
## ~~ORIGINAL~~ COMPLAINT

COMES NOW THE PLAINTIFF COREY LEA to sue the DEFENDANTS FARMERS NATIONAL BANK,

WARREN COUNTY KENTUCKY, LARRY HINTON, DAVID BRODERICK AND DAN HARBISON and

Would states as follows:

### JURISDICTION

Pursuant to 28 U.S.C. § 1332, 28 U.S.C. § 1603 as it arises under the laws of the United States

and presents a federal question; and pursuant to 28 U.S.C. § 1343, as it seeks to secure

equitable or other relief under an Act of Congress, and the rules of regulations of a Federal

Agency in which Farmers National Bank was a party to a guaranteed contract and the plaintiff

1

relied upon the full performance therein as a third party beneficiary under Kentucky Law.

## PARTIES TO THE SUIT

**PLAINTIFF COREY LEA** is a resident of Hendersonville, Tennessee and resides at 16118 Monthaven Park Place, with the mailing address of P.O. Box 422, Arrington, Tennessee 37014.

**DEFENDANT JAMES STEVE TURNER**, CEO and Chairman of Farmers National Bank, can be served at 25 Century Blvd, Nashville, TN 37214. Mr. Turner also owns "MarketStreet Equities" the holding company for Farmers National Bank. By DEFINITION of 'Holding Company' A parent corporation, limited liability company or limited partnership that owns enough voting stock in another company to control its policies and management.

**DEFENDANT FARMERS NATIONAL BANK,** is a Kentucky Corporation that is controlled by a Tennessee Corporation and Tennessee Resident is the CEO and Chairman of the Board. In addition, for purpose of the instant suit, an agent or instrument of the United States Department of Agriculture. 28 U.S. Code § 1346(a)(2). Farmers National Bank can be served at 1595 Veterans Memorial Highway Scottsville, KY 42164.

**DEFENDANT UNITED STATES DEPARTMENT OF AGRICULTURE,** is an agency of the United States and can be served at 1400 Independence Avenue, Washington, DC 20530 and can be served by process to the United States Department of Justice, 950 Pennsylvania Avenue, Washington, DC 20530.

**DEFENDANT LARRY HINTON,** can be served at 728 Huntington St. Bowling Green, KY 42103-6227. Larry Hinton is also an indirect agent or instrument of the United States.

2

**DEFENDANT WARREN COUNTY, KENTUCKY,** can be served at Warren County Kentucky Judge Executive, 429 East 10th Ave, Suite 201, Bowling Green, KY 42101.

**DEFENDANT DAN HARBISON,** can be served at 973 Iron Bridge Rd.,Bowling Green, KY 42103-9756.

**DEFENDANT DAVID BRODERICK** can be served at PO Box 3100Bowling Green, KY 42102-3100 or 921 College St Bowling Green, KY 42101-2134

## I.
## INTRODUCTION

1. The plaintiff brings this action against defendants as a third party beneficiary to a loan guarantee contract with the United States Department of Agriculture. The Plaintiff has been a resident of Hendersonville, Tennessee since July of 2014.

2. The dispute lies solely on a breach of contract action and fraud and collusion to perfect the breach of the contract. Plaintiff further asserts a principal agency relationship between Defendant United States Department of Agriculture and Farmers National Bank.

3. Farmers National Bank held the first mortgage on a 72+/- farm located at 2307 New Cut Rd., Alvaton, Kentuky.

4. Plaintiff filed Bankruptcy on May 27, 2014 and the defendants sold the farm before seeking relief from the Bankruptcy Court.

5. Plaintiff is a member of a protected class, African American and was identified by The

3

United States Department of Agriculture as such.

6. The plaintiff had and accepted discrimination complaint after May 22. 2008 and is

protected under all the provisions of the moratorium, including the sale of a property, nunc pro

tunc, as identified in the rules and regulations.

7. Farmers National Bank did agree to abide by all rules and regulations and future laws

that govern the USDA. [See Exhibit 1 last section].

"This Loan Guarantee and all action hereunder are governed by and must be in compliance with
the statutory · authority under regulations issued thereunder at 7 C.F.R. 762 in effect on the
date of this instrument, and future amendments not inconsistent with this instrument."

8. Farmers National Bank did foreclose on subject property on May 29, 2014 before

receiving relief from the automatic stay.

9. Corey Lea Inc., a dissolved Kentucky Corporation and Corey Lea, individual appeared on

the mortgage held by Farmers National Bank and are subject to actions to administer the

winding up the affairs under:

## Kentucky Revised Statutes

"273.357 Survival of remedy after dissolution.
The dissolution of a corporation either (1) by the filing of articles of dissolution with
the Secretary of State, or (2) by a decree of court when the court has not liquidated
the assets and affairs of the corporation as provided in KRS 273.161 to 273.390
shall not take away or impair any remedy available to or against the corporation, its
directors, officers, or members, for any right or claim existing, or any liability
incurred, prior to the dissolution if action or other proceeding thereon is commenced
within two (2) years after the date of such dissolution. Any such action or proceeding
by or against the corporation may be prosecuted or defended by the corporation in
its corporate name. The members, directors, and officers may take corporate or
other action appropriate to protect the remedy, right, or claim"

""American Jurisprudence, Vol. 13, Sec. 412, page 465, states the rule as follows: '* * * the act
of dissolution of a corporation works a change in the form of the interests of its members by
destroying the stock and substituting the thing which the stock represented-- that is, a legal
interest in the property-- and leaves the members to such a division of this.' This statement was

4

quoted with approval in Brooks v. Saloy, 334 Ill.App. 93, 100, 79 N.E.2d 97. The same principle is recognized by the courts of Kentucky. In Shadoin v. Sellars, 223 Ky. 751, 4 S.W.2d 717, 719, the Kentucky Court of Appeals, After citing numerous Kentucky cases, stated: 'Under the rule announced in these cases when the corporation ceased to exist in 1914 the property then standing in its name vested in the stockholders.' See also to the same effect Barrowman Coal Corp. v. Kentland Coal and Coke Co., 302 Ky. 803, 196 S.W.2d 428, and Kash v. Lewis, 224 Ky. 679, 6 S.W.2d 1098."

## II.
## CAUSES OF ACTION

### BREACH OF CONTRACT AND DOCTRINE OF THIRD PARTY BENEFICIARY

"Under Kentucky law, which we must apply to this question of contract interpretation, "all that is necessary" for an enforceable contract for the benefit of a third party "is that there be consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefiting the third party." Simpson v. JOC Coal, Inc., 677 S.W.2d 305, 309 (Ky.1984). Thus, Simpson provides that the central issue in determining whether the contract was intended to benefit a third party is the relevant intent of the promisee who purchases the promise from the promisor."

"Under Kentucky law, third parties having the right to enforce a contract are characterized as either "donee" or "creditor" beneficiaries. Sexton v. Taylor County, 692 S.W.2d 808, 810 (Ky.App.1985) (citing King v. National Industries, Inc., 512 F.2d 29, 33 (6th Cir.1975)). The court in King stated that:"

"One is a donee beneficiary if the purpose of the promisee in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of an actual or supposed duty or liability of the promisee to the beneficiary."

"512 F.2d at 33. A promise to discharge the promisee's duty to a creditor beneficiary creates a duty in the promisor to the creditor beneficiary. Therefore, a creditor beneficiary who has an enforceable claim against the promisee, as here, can get a judgment against either the promisor, the promisee, or both. Hendrix Mill & Lumber Co. v. Meador, 228 Ky. 844, 849, 16 S.W.2d 482, 484 (1929)."

10. Farmers National Bank did violate the rules and regulations of the guaranteed contract

and the moratorium provided by the 7 CFR 766.358 by selling the property belonging to the

5

plaintiff nunc pro tunc.

11. The rule and regulation that Farmers National Bank Violated goes as follows:

7 CFR 762.149 (b).

B Borrower Files for Bankruptcy after Loan Note is Accelerated 7-15-08
If the borrower files bankruptcy after the loan note is accelerated, the lender suspends
liquidation proceedings until 1 of the following actions:

• bankruptcy case is dismissed or closed

• order lifting automatic stay is obtained from the court

•*-property is no longer property of the bankruptcy estate and the borrower has been--
*discharged (see Part 13).

12. Farmers National Bank did not receive relief from the Automatic Stay until June 4, 2014.

Therefor it violated the provisions of the guaranteed contract in which the plaintiff relied on full

performance of the contract.

13. Plaintiff further alleges that the Guaranteed loan is encompassed under:

§ 766.358 Acceleration and foreclosure moratorium.

(a) Notwithstanding any other provisions of this subpart, borrowers who file or have
filed a program discrimination complaint that is accepted by USDA Office of
Adjudication or successor office (USDA), and have been serviced to the point of
acceleration or foreclosure on or after May 22, 2008, will not have their account
accelerated or liquidated until such complaint has

been resolved by USDA or closed by a court of competent jurisdiction. This moratorium
applies only to program loans made under subtitle A, B, or C of the Act (for example, CL,
FO, OL, EM, SW, or RL). Interest will not accrue and no offsets will be taken on these
loans during the moratorium. Interest accrual and offsets will continue on all other
loans, including, but not limited to, non-program loans.

(1) If the Agency prevails on the program discrimination complaint, the interest that
would have accrued during the moratorium will be reinstated on the account when the
moratorium terminates, and all offsets and servicing actions will resume.

(2) If the borrower prevails on the program discrimination complaint, the interest that
would have accrued during the moratorium will not be reinstated on the account unless
specifically required by the settlement agreement or court order.

(b) The moratorium will begin on:

(1) May 22, 2008, if the borrower had a pending program discrimination claim that was
accepted by USDA as valid and the account was at the point of acceleration or
foreclosure on or before that date; or

6

(2) The date after May 22, 2008, when the borrower has a program discrimination claim accepted by USDA as valid and the borrower's account is at the point of acceleration or foreclosure.

(c) The point of acceleration under this section is the earliest of the following:

(1) The day after all rights offered on the Agency notice of intent to accelerate expire if the borrower does not appeal;

(2) The day after all appeals resulting from an Agency notice of intent to accelerate are concluded if the borrower appeals and the Agency prevails on the appeal;

(3) The day after all appeal rights have been concluded relating to a failure to graduate and the Agency prevails on any appeal;

(4) Any other time when, because of litigation, third party action, or other unforeseen circumstance, acceleration is the next step for the Agency in servicing and liquidating the account.

14. The guaranteed contract with Farmers National Bank, The USDA was to directly benefit

plaintiff and is a "FO" loan as stated on the Guaranteed contract.

15. Plaintiff further asserts that the United States is being sued for the breaches in the Court

of Federal Claims where the contract exceeds $10.000 and The Court of Federal Claims has

exclusive jurisdiction under the Tucker Act.

16. Farmers National Bank did violate § 762.149(d) Foreclosure -

"When the property is liquidated, the lender will apply the net proceeds to the guaranteed loan debt."

17. Famers National Bank did not pay the net proceeds to the second mortgage holder, The

USDA. The farm sold for $325, 000. Farmers National Bank held the mortgage for $180,000.

18. Farmers National Bank did further violate the following rules and regulations:
2-FLP Par.111B (7 CFR 762.120(k)) 2-FLP Par.123 B (7 CFR 762.121(b))
as per 2-FLP Par 287
7CFR 762.140(a)
2-FLP Handbook Part 12 (Page 12-1 through 12-65)
Par.327C [7 CFR 762.145]
2-FLP Par.358 on page 14-9 through 14-
7 C.F.R. 762
7 CFR 762.149

Case 3:15-cv-00595 Document 13 Filed 09/08/15 Page 7 of 48 PageID #: 92

**UNJUST ENRICHMENT**

Re-allege 1-18

> 19. Farmers National Bank did keep all proceeds from the sale and were not entitled to attorney's fees in accordance to:

> (7 CFR 762.148)

> A Claims for Expenses in Liquidation

> [7 CFR 762.148(b)] Reasonable and customary liquidation expenses may be deducted from the proceeds of the collateral in liquidation bankruptcy cases or in reorganization bankruptcy where the plan calls for a partial liquidation of the collateral.

> • In-house expenses are not considered reasonable and customary liquidation expenses and may not be deducted from collateral proceeds.

Farmers National Bank has unjustly enriched itself in the amount of $145,000. While colluding

with codefendants and depriving plaintiff of his constitutional rights and the right to file

bankruptcy with subject property being part of bankruptcy estate.

**42 U.S. Code § 1983**

Re-allege 1-19

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

> 20. Defendants Larry Hinton, David Broderick and Dan Harbison did to conspire to violate

the rules and regulations that governed the guaranteed contract by selling the farm that belong

to plaintiff nunc pro tunc.

> 21. Defendant David Broderick announced that the sale may be invalid pending a hearing

from bankruptcy court.

8

"There is also no dispute that the Referee was aware of the bankruptcy filing before proceeding with the foreclosure sale. He chose to announce the fact that the filing had occurred and then proceed with the sale and find out later if the bankruptcy petition "was an accurate and true filing." Id. These actions are sufficient to constitute a willful violation of the stay. 11 U.S.C. § 362(a)(1). A referee who has knowledge of a bankruptcy filing is not at liberty to proceed with a foreclosure sale with a "caveat," that the sale will be null and void if it violates the automatic stay. The sale will be void, regardless, and such a caveat does nothing to avert the intentional violation of the stay that follows."

Once a party receives reasonable, actual notice of a bankruptcy filing, that party has the responsibility to ensure the stay is not violated. In re Lickman, 297 B.R. 162, 192 (Bankr. M.D. Fla. 2003). The responsibility includes a duty to seek further information as to the applicability and scope of the automatic stay and the risk of damages for failure to obtain leave or clarification from the bankruptcy court. Id. at 192-193. The Tenth Circuit recently upheld sanctions against a creditor for willfully violating the automatic stay after the debtors' attorney informed the creditor's vice president of the bankruptcy filing by telephone. In re Johnson, 501 F.3d 1163, 1172 (10th Cir. 2007).

22. Larry Hinton, Dan Harbison and David Broderick did conspire to violate the rights

of the plaintiff by selling the property before receiving relief from the automatic stay. Each

defendant were aware of the rules of the guaranteed contract and the bankruptcy court. If they

did not know, they should have known.

"See In re Vazquez, 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) (creditor and its attorney were jointly and severally liable for violation of discharge injunction "because under general principles of agency law, an agent whose tortious conduct renders the principal liable is also liable for his own tortious acts"); In re Davis, 177 B.R. 907, 911 (B.A.P. 9th Cir. 1995) ("Willful violation of the automatic stay is an intentional tort for which compensatory and punitive damages may be awarded."); In re Skaggs, 183 B.R. 129, 130 (Bankr. E.D. Ky. 1995) (same); Restatement (Third) of Agency § 7.01 (2008) (agent is subject to liability to a third party harmed by the agent's tortious conduct even when acting as an agent)."

## 42 U.S. Code § 1986

Re-allege 1-22
"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of

9

persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."

23. Defendants Marketstreet Equities Investment Co., James Steve Turner, Farmers National

   Bank, Warren County Kentucky and Dan Harbison did know what defendants did know that defendants Larry Hinton, David Broderick and Dan Harbison were violating the

   automatic stay and the rules and regulations that governed the guaranteed contract

   that existed between Farmers National Bank, The USDA and Corey Lea Inc. (Dissolved).

"In re Stucka, supra, 77 B.R. at 781; see also Mallis v. Bankers Trust Co., 717 F.2d 683, 689 n. 9 (2d Cir. 1983) 689 n. 9 ("basic tenet" of law of agency that knowledge of agent is imputed to principal).

   Attorneys are also presumed to act with authority from – and as agents of – their clients. "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent . . . ." Link v. Wabash R.R. Co., 370 U.S. 626, 634, 82 S.Ct. 1386, 1390 (1962); See also Chira v. Lockheed Aircraft Corp., 367 B.R. 54, 67 (2d Cir. 1980) ("absent a truly extraordinary situation," client is not excused from consequences of attorney's nonfeasance); In re Artha Mgmt., 1995 WL 606252, *8 (S.D.N.Y. Oct. 12, 1995) (citing cases); In re Linzer, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001) (general rule in agency law that "adequate notice to or actual knowledge acquired by an agent is imputed to the principal" applies to relation of attorney and client).

   The same agency rules apply to sub-agents. In re Withrow, 93 B.R. 436 (Bankr. W.D.N.C. 1988), a credit card company willfully violated the automatic stay where the debtor provided notice of his filing to an attorney representing a collection agency that the credit card company's servicing agent and sister corporation retained to collect on the debtor's delinquent account. Id. at 437. The bankruptcy court imputed knowledge of the bankruptcy filing to the credit card company, and actions by its other agents constituted a willful violation of the automatic stay. Id. at 438. In so holding, the Withrow court observed that the credit card company elected to operate through a complex, "convoluted system of agents, subagents and sister corporations" that was likely to produce stay violations and could not assert the results of that complex system as a defense. Id. at 439; see also 2A N.Y. Jur. 2d Agency § 166 (relation of agency exists between the principal and an authorized subagent). An analogous line of cases holds that even a large government agency such as the Internal Revenue Service "may not shield their violations of the stay . . . by erecting a blind of 'complexity'." In re Stucka, supra, 77 B.R. at 783. The inability of a bureaucracy to react in a timely manner to a bankruptcy filing by providing actual notice to its collection agents is not an excuse for violating the automatic stay.

In re Santa Rosa Truck Stop, Inc., 74 B.R. 641, 643 (Bankr. N.D. Fla. 1987) ("If the automatic stay is to afford any meaningful protection to a debtor attempting to reorganize, it must be enforced against the colossus of the I.R.S. just as it is against individual and corporate creditors who may persist in their collection efforts after a petition for relief has been filed."); see also In re Lile, 103 B.R. 830, 837 (Bankr. S.D. Tex. 1989) (agent's actions were deliberate and intentional and constituted willful conduct on the part of the IRS); In re Price, 103 B.R. 989, 993 (Bankr. N.D. Ill. 1989) (IRS charged with knowledge of its agents; size and complexity does not excuse disregard for the automatic stay).

All that is required for a willful violation of the automatic stay is a deliberate act taken in violation of a stay, which the violator knows to be in existence. In re Crysen/Montenay Energy Co., supra, 902 F.2d at 1105.

Each of these factors were satisfied in this case.

A principal that conducts activity through an agent will be liable to third parties harmed by the agent when that harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent. Restatement (Third) of Agency § 7.05. See Weiss v. Furniture-In-The-Raw, 62 Misc.2d 283, 285, 306 N.Y.S.2d 253, 255 (N.Y. Civ. Ct. 1969) (employer liable for failure to instruct sub-agent, hired "at random 'off the street'" as to the manner in which he was to conduct himself) (citing Restatement (Second) of Agency § 213). A principal is also liable to a third party harmed by an agent's tortious conduct. Restatement (Third) of Agency § 7.03 (2006).

## FRAUD

Re allege 1-23

24. Defendants Farmers National Bank and it's counsel Larry Hinton did commit fraud by

representing to the Warren Circuit Court that it was allowed to collect over $50,000 in

attorney's fees when in fact the rules and regulation of the guaranteed contract specifically

states the contrary.

25. Defendants Farmers National Bank did not pay the balance of aprox $145,000 to the

USDA after the illegal of subject property of this instant suit.

26. Defendant Farmers National Bank received protective advances from the The United

States and misrepresented the amount in default over a 5 year span.

## VIOLATION OF THE LITTLE TUCKER ACT

27. Defendant United States is liable for negligent servicing of a guaranteed contract.

11

Plaintiff asserts third party beneficiary status and principal-agent relationship with The

USDA and Farmers National Bank. The amount requested from the violation can be

found in the "Prayer and Demand" section further down.


""As a matter of law, a "plaintiff must be in privity with the United States to have standing
to sue the sovereign on a contract claim." S. Cal. Fed. Sav. & Loan Ass'n v. United States, 422
F.3d 1319, 1328 (Fed. Cir. 2005). Privity "takes on even greater significance in cases such as
this, because the 'government consents to be sued only by those with whom it has privity of
contract.'" Id. (quoting Erickson Air Crane Co. of Wash. v. United States, 731 F.2d 810, 813
(Fed. Cir. 1984)); see also Anderson v. United States, 344 F.3d 1343, 1351 (Fed. Cir. 2003)
(holding that "privity is lacking," where plaintiffs were not signatories to the contractual
documents); see also id. ("To have standing to sue the sovereign on a contract claim, a plaintiff
must be in privity of contract with the United States."). "Absent privity between [Plaintiffs] and
the [G]overnment, there is no case." Katz v. Cisneros, 16 F.3d 1204, 1210 (Fed. Cir. 1994)."

 " Two exceptions to the general rule of privity are relevant here: third-party beneficiary
status and agency relationships. See First Hartford Corp. Pension Plan & Trust v. United States,
194 F.3d 1279, 1289 (Fed. Cir. 1999) (stating that, "despite [a] lack of privity, . . . suits may be
brought against the [G]overnment in the [United States] Court of Federal Claims by an intended
third-party beneficiary"); see also Christos v. United States, 48 Fed. Cl. 469, 477–78 (2000)
("Third-party beneficiary status is an exception to the privity requirement. . . . Another
exception to the privity requirement is an agency relationship."), aff'd, 300 F.3d 1381 (Fed. Cir.
2002)."



## COLLUSION

28. Farmers National Bank  and Dan Harbison did conspire with Larry Hinton, David

Broderick to hide the protective advances distributed to the Bank from the United States

Government and from Warren County and the plaintiff.

 This action has not been litigated by the Bankruptcy Court. The Bankruptcy Judge passed on

adversary proceedings as well as the district court for the Western District of Kentucky. The

plaintiff in now a residence of Tennessee and is bringing this action in the district in which he

12

lives. The Bankruptcy case has been dismissed and the fraudulent actions of the defendants are

now ripe for adjudication. The bankruptcy actions was dismissed prior to the 341 meeting.

However, some of the actions were taken well after the dismissal and is now in the jurisdictions

of the federal court. The federal circuit has taken the same position in Lea v. The United States

in 14-5100 by granting jurisdiction to the court of federal claim in a similar breach action.

## PRAYER FOR RELIEF

All allegations set forth in the above-stated paragraphs are incorporated
herein by reference as though fully set out, and Plaintiff respectfully asks that this
court grant him the following relief and enter final judgment against Defendants
Farmers National Bank, Warren County Kentucky, Larry Hinton, David Broderick, Dan Harbison

a. Declare that Defendant's failure to abide by the terms of the guaranteed contract between
Farmers National Bank, The United States Department of Agriculture and Corey Lea Inc. (a
dissolve Kentucky Corporation) as a third party beneficiary that relied on full performance of
the stated contract.

b. Declare that Defendant's action of concealing the advances made to Farmers National Bank
by the United States for default;

c. Declare that Defendant's action of committing fraud by keeping proceeds from net sale of
subject property against the rules and regulations that governs the stated guaranteed contract
and laws implemented by an Act of Congress;

d. Declare that Defendant's actions constitute a violation a breach of contract, fraud, collusion,
unjust enrichment, 42 U.S. Code § 1983 and 42 U.S. Code § 1986;

e. Award compensatory damages for Defendant's a breach of contract, fraud, collusion, unjust
enrichment, 42 U.S. Code § 1983 and 42 U.S. Code § 1986; In the amount over $145,000

f. Award punitive damages for Defendant's intentional acts of discrimination; a violation a
breach of contract, fraud, collusion, unjust enrichment, 42 U.S. Code § 1983 and 42 U.S. Code §
1986; In the amount over $145,000

13

g. Award treble damages for Defendants actions that constitute a violation a breach of contract, fraud, collusion, unjust enrichment, 42 U.S. Code § 1983 and 42 U.S. Code § 1986; In the amount over $145,000

h. Award appropriate equitable relief;

i. Award any further relief deemed just.

j. Plaintiff requests that The United States and it's Agency, USDA pay the sum of $9,999 for

negligent servicing of the guaranteed contract. Exhibit A.


Respectfully Submitted,

Corey Lea Pro Se
P.O. BOX 422
Arrington, Tn. 37014
615 308 7787

I certify that a true and correct copy of this complaint was served certified mail to:

Farmers National Bank
1595 Veterans Memorial Hwy
Scottsville, KY
(270) 237-314

Warren County Kentucky Judge Executive
429 East 10th Ave, Suite 201
 Bowling Green, KY 42101

Larry Hinton
728 Huntington St
Bowling Green, KY 42103-6227

And

310 E 11th Ave,
Bowling Green, KY 42101

David Broderick
 PO Box 3100

14

Bowling Green, KY 42102-3100

And

921 College St
Bowling Green, KY 42101-2134

Dan Harbison
973 Iron Bridge Rd
Bowling Green, KY 42103-9756

Marketstreet Equities
25 Century Blvd,
Nashville, TN 37214

James Steve Turner c/o Marketstreet Equities
Ceo and Chairman of Farmers National Bank
25 Century Blvd, Nashville, TN 37214

Position 5

This form is available electronically.

| FSA-1980-27 | U.S. DEPARTMENT OF AGRICULTURE |
| (11-27-06) | Farm Service Agency |

## LOAN GUARANTEE

| 1 . Lender's Name and Address (including Zip Code) | 2. Borrower's Name and Address (including Zip Code) |
|---|---|
| FARMERS NATIONAL BANK<br>5290 SCOTTSVILLE ROAD<br>BOWLING GREEN, KY 42104 | COREY LEA, INC.<br>260 THE TRACE CIRCLE<br>ALVATON, KY 42122 |
| Telephone No. (including Area Code): (270) 783-8300 | Telephone No. (including Area Code): |

| 3. Loan Type: | 4. FSA Case Number |
|---|---|
| ☑ FO   ☐ OL   ☐ LOC | 21-014-562157884 |

| 5. Loan Amount or Line of Credit Ceiling | 6. Guarantee Percent | 7. Date of Promissory Note or Line of Credit Agreement |
|---|---|---|
| $      180,000.00  ----- | 90 % | 10-25-2007 |

8. The loan is evidenced by (a) One _____ notes described below. This instrument is attached to note (b) One _____

In the principal amount of (c) $180,000.00 _____ and is number (d) _____ 1 _____ of (e) _____ 1

| 9.  Lender Note ID Number | 10.  Principal Amount | 11. Percent of Total Principal Amount | 12. Guaranteed Amount |
|---|---|---|---|
| 2014692 | $          180,000.00 | 100 | $            162,000.00 |
| | $ | | $ |
| | $ | | $ |
| | $ | | $ |
| 13. TOTALS: | $          180,000.00 | | $            162,000.00 |

NOTE: Copy of Note covered by this agreement must be attached.

14.  In consideration of the lender making the listed loans or line of credit advances, the United States of America, acting through the Farm Service Agency of the United States Department of Agriculture (hereafter called "Government"), pursuant to the Consolidated Farm and Rural Development Act (7 U.S.C. 1921 et. seq.), agrees that in accordance with and subject to the conditions and requirements in this Loan Guarantee, it will pay to:

   A.   Any holder, 100 percent of any loss on the guaranteed portion held by such holder and on interest due on such portion.

   B.   The lender, any loss sustained by such lender on the guaranteed portion including:

      (1)  Principal and Interest indebtedness as evidenced by the notes or by assumption agreements,

      (2)  Any loan subsidy due and owing, and

      (3)  Principal and Interest indebtedness on authorized protective or emergency advances for protection and preservation of collateral.

15.  If the Government conducts the liquidation of the loan, loss occasioned to a lender by accruing interest after the date the Government accepts responsibility for liquidation will not be covered by this Loan Guarantee. If lender conducts the liquidation of the loan, accruing interest shall be covered by this Loan Guarantee for 90 days after the decision to liquidate in accordance with the liquidation plan.

   In the case of a Chapter 7 bankruptcy, in cases where the lender filed an estimated loss claim, the Agency will pay the lender interest which accrues during and up to 45 days after the date of discharge on the portion of the chattel only secured debt, that was estimated to be secured but was found to be unsecured upon final disposition, and up to 90 days after the date of discharge on the portion of real estate secured debt that was estimated to be secured but was found to be unsecured upon final disposition.  The Agency will pay the lender interest which accrues during and up to 90 days after the time period the lender is unable to dispose of the acquired property due to state imposed redemption rights on any unsecured portion of the loan during the redemption period, if an estimated loss claim was paid by the Agency during the liquidation action.

FSA-1980-27 (11-27-06)

| CONDITIONS OF GUARANTEE | |
|---|---|
| Loan or Line of Credit Servicing | The lender will be responsible for servicing the entire loan and will remain the secured party of record. The lender agrees that, if liquidation of the account becomes imminent, the lender will consider the borrower for interest assistance under 7 C.F.R. 762 and will not initiate foreclosure action until 60 days after a determination has been made with respect to the eligibility of the borrower to participate in the interest assistance program. |
| Lien Priorities | The entire loan will be secured by the same security with equal lien priority for the guaranteed and unguaranteed portions. The unguaranteed portion will not be paid first nor given any preference or priority over the guaranteed portion. |
| Full Faith and Credit | The Loan Guarantee constitutes an obligation supported by the full faith and credit of the United States and is incontestable except for fraud or misrepresentation of which lender or any holder has actual knowledge at the time it became such lender or holder or which lender or any holder participates in or condones. Any losses occasioned will be unenforceable to the extent that loan funds are used for purposes other than those specifically approved by Government in its conditional commitment for guarantee. In addition, the Loan Guarantee will be unenforceable by lender to the extent any loss is occasioned by the violation of usury laws, negligent servicing, or failure to obtain the required security regardless of the time at which Government acquires knowledge of the foregoing. Negligent servicing is defined as the failure to perform those services which would be considered normal industry standards of loan management or failure to comply with any servicing requirement of 7 C.F.R. 762 or the lender's agreement or the Loan Guarantee. The term includes the concept of failure to act or failure to act timely consistent with actions of a reasonable lender in loan making, servicing, and collection. |
| Rights and Liabilities | The Loan Guarantee and right to require purchase will be directly enforceable by holder notwithstanding any fraud or misrepresentation by lender or any unenforceability of this Loan Guarantee by lender. Nothing contained herein will constitute any waiver by Government of any rights it possesses against the lender. Lender will be liable for and will pay to Government any payment made by Government to holder which if such lender had held the guaranteed portion of the loan, Government would not be required to make. |
| Payments | Lender will receive all payments of principal, or interest, and any loan subsidy on account of the entire loan and will promptly remit to the holder the holder's pro rata share thereof determined according to its respective interest in the loan, less only lender's servicing fee. |
| Protective and Emergency Advances | Authorized protective and emergency advances made by the lender will be guaranteed against a percentage of loss to the same extent as provided in this Loan Guarantee. Protective and emergency advances not authorized by the regulations will not be guaranteed. |
| Custody of Unguaranteed Portion | The lender must retain at least 10 percent of the total guaranteed loan amount from the unguaranteed portion of the loan in its portfolio, except when the loan guarantee exceeds 90 percent, the lender must retain the total unguaranteed portion. |
| Termination of Guarantee | The Loan Guarantee will terminate automatically (a) upon full payment of the guaranteed loan, (b) upon full payment of any loss obligation under this Loan Guarantee, (c) upon denial of the lender's claim and expiration of appeal rights, or (d) upon written notice from the lender to Government that the Loan Guarantee will terminate 30 days after the date of notice, provided the original Loan Guarantee is returned to the Government to be canceled. |
| Settlement | The amount due under this Loan Guarantee will be determined and paid as provided in 7 C.F.R. 762. |
| Interest Capitalization | Lender and holder may capitalize interest only when the note is restructured. When delinquent interest is capitalized and treated as principal, the new principal amount may exceed the principal amount of the loan listed herein, but may not exceed statutory loan limits. The new loan principal amount and new guaranteed portion will be identified as restructuring in an addendum to this Loan Guarantee. Such capitalized interest will be covered by this Loan Guarantee. Reference to principal and interest and principal advanced herein, shall include any capitalized interest on the guaranteed portion of the loan resulting from the restructuring of a guaranteed farm loan and not exceeding statutory loan limits. |
| Regulation | This Loan Guarantee and all action hereunder are governed by and must be in compliance with the statutory authority and regulation issued thereunder at 7 C.F.R. 762 in effect on the date of this instrument, and future amendments not inconsistent with this instrument. |

| 16A.  Signature of FSA Official | 16B. Title | 16C. Date *(MM-DD-YYYY)* |
|---|---|---|
| *Bryan Danson* | Farm Loan Manager | 11-16-2007 |

*Exhibit 2*
*1 of 2*

**Liquidation Plan of Corey Lea, Inc., Loan # 2015102**

After many attempts both written correspondence and phone calls along with numerous broken promises to pay this account is in default. The loan has a 90% guarantee provided by FSA.

Documents have been sent to Larry Hinton with Reynolds, Johnston, Hinton, and Pepper. The real estate will be liquidated by foreclosure. An auctioneer, to be named, that is agreeable with the customer will assist with the sale once the date has been chosen.


Gloria Lyles

Vice President

Farmers National Bank



*Exhibit 2*
*2 of 2*



**USDA**

United States
Department of
Agriculture

February 3, 2009

Farm and Foreign
Agricultural
Services

Gloria Lyles
Farmers National Bank

Farm Service Agency

943 Fairview Avenue
Bowling Green, KY 42101

Warren-Edmonson
FSA Office
925 Lovers Lane
Bowling Green, KY
42103-7540
(270) 843-1111
FAX (270) 783-9090

Dear Ms. Lyles:

We approve the liquidation plan of Corey Lea, Inc. submitted on February 2, 2009.
If we can be of any assistance, please advise.

Respectfully,

Bryan Denison
Farm Loan Manager

USDA is an Equal Opportunity Employer



*Exhibit 3*

*1 of 3*

JUL 2 8 2009

TO:    Johnny R. Toles, Jr.
        Director, Office of Civil Rights
        Farm Service Agency

FROM:    D. Leon King
        Chief
        Program Intake Division

SUBJECT:  Discrimination Complaint of Corey Lea
          Complaint Number: 08-1401
          Alvaton, Kentucky

    The Office of Adjudication is processing the attached discrimination complaint filed by the above referenced individual against the Farm Service Agency.  Please request suspension of any foreclosure action that may be pending in this case.

    If you have any questions regarding this request, please contact my office at (202) 720-9396.

Attachment

PID:intake:     lea-stop-foreclosure-FSA

Case 1:13-cv-00110-JHM-HBB   Document 37-2   Filed 12/16/13   Page 6 of 33 PageID #: 776
Case 1:12-cv-00052-JHM-LLK   Document 161-1   Filed 04/23/13   Page 2 of 3 PageID 3281

2 of 3

USDA Program Complaints Management System

## Complaint

USDA Program Complaints Management System

---

### Complaint: 08-1401

| | |
|---|---|
| Complaint Number | 08-1401 |
| Receipt Method | Facsimile |
| Postmark Date | |
| Correspondence Date (from Complainant) | 05/01/2008 |
| USDA Received Date | 05/01/2008 |
| HUD Decision Date | |
| Number of Days Processed | 722 |
| Language | English |
| Agency | FSA |
| Region | |
| Office | |
| Complainant Information? | Yes |
| Title | Mr. |
| First Name | Corey |
| Middle Name | |
| Last Name | Lea |
| Home Phone | |
| Alt Phone | |
| Email | |
| Comments | |
| Complainant Name Confirmed? | No |

## Document Listing                                    USDA Program Complaints Management System

Complaint: 08-1401

| Date | Type | Keywords | Document | Comments | Entered By |
|------|------|----------|----------|----------|------------|
| 2008-05-23 00:00 | | additional Information - EMAIL regarding the Loan Officer | 08-1401 BP.PDF | | |
| 2008-08-04 00:00 | | Response to 15 Day | 08-1401 Response.PDF | | |
| 2008-07-23 00:00 | 15 Day Letter | | 08-1401 ack.tif | | |
| 2009-02-18 15:44 | Acceptance Letter | | 08-1401acceptance 1271.tif | 2/4/09 | |
| 2009-02-18 09:05 | Acknowledgement Letter | | | Added for workflow message. | |
| 2008-05-20 00:00 | Complaint Correspondence | | 08-1401.PDF | | |
| 2008-08-18 00:00 | Other | Failure to state a claim | | Forward for signature-CV | |
| 2009-01-14 12:11 | Other | Additional Information | Corey Lea.pdf | | |
| 2009-03-31 15:55 | Other | Signed Certified Green Card | Corey Lea signed certified green card.doc | | |
| 2009-05-29 10:05 | Other | Resubmitted Interrogatories to Branch Chief | | | |
| 2009-06-01 10:04 | Other | Investigative Plan | | Submitted to Branch Chief | |
| 2009-06-18 13:25 | Other | Signed ECOA LETTER | 08-1401 ECOA.pdf | | |
| 2009-08-06 10:29 | Other | Complainant Interrogatories | 08-1401.pdf | | |
| 2009-02-18 15:50 | Request for APS | | 08-1401 req for aps1270.tif | 2/4/09 | |
| 2009-07-28 09:36 | Stop Foreclosure Memo | | 08-1401 stop foreclosure.pdf | | Posey, Daphne |

ℙ ⸳⸳

May 4, 2010

United States
Department of
Agriculture

Farm and Foreign
Agricultural
Services

Farm
Service
Agency

Kentucky State
FSA Office
771 Corporate Dr.
Ste. 100
Lexington, KY 40503

Phone:
859.224.7601
Fax: 859.224.7691

Website:
www.fsa.usda.gov/ky

Corey Lea
260 The Trace Circle
Alvaton, KY 42122

Re:    Freedom of Information Act Request

Dear Mr. Lea:

The Kentucky State Office received your request dated April 28, 2010. After further review and consultation from the National Office it has been determined that your request reasonably describes the records sought and is duly acknowledged.  Your request has been assigned control number 21-000-2010-000020.  Please use this control number for any additional communication regarding this request.

Your request and determination follows:

1.  Request for the "Loss Claim" by Farmers National Bank to the Farm Service Agency on the guaranteed loan for Corey Lea guarantor.  Along with the form or letter requesting the "loss claim and the authorization of a FSA Official that is authorized to sign it or its authorized legal representative.

Determination: No Responsive Records

2.  The form from the FSA to Farmers National Bank giving them the right to foreclose on a guaranteed loan.

Determination: No Responsive Records

3.  A copy of the 60 day letter mentioned below:

The second phase of processing a loss claim requires the agency to refer the loss claim, or debt, to the Secretary of the Treasury, 7 C.F.R. § 1951.137(a). Before the debt is reported, the agency is required to send a 60-day-due process notice in which the borrower is given notice of the debt, the opportunity to review "the records related to the debt, from the Agency," and "[a]n opportunity to review the matter within the Agency." 7 C.F.R. § 1951.137(b)(1)-(3).

Determination: No Responsive Records



An Equal Opportunity Provider and Employer

Lea, Page 2                                                                    May 4, 2010

If you believe this determination to withhold information is incorrect, you may
appeal to the FSA Administrator. The Appeals and Litigation Staff must receive
your written appeal within forty-five (45) days of the date of this letter/email.
Please include in the appeal a brief explanation of why you believe this decision is
in error. Be sure to include a copy of your initial request letter in your appeal
package, and clearly mark both your letter and its envelope with the words
"Freedom of Information Act Appeal." Mail your appeal package to the following
address:


Mail your appeal package to the following address:

Administrator
Attn: Appeals and Litigation Staff
United States Department of Agriculture
Farm Service Agency, Stop Code 0570
1400 Independence Avenue SW, Room 6722-S
Washington, DC 20250-0570

Please feel free to contact Marcinda Kester, FOIA Officer (859)224-7637 with any
additional questions or concerns.

Respectfully,


John W. McCauley
State Executive Director

cc: Mitch Whittle, Farm Loan Chief



**An Equal Opportunity Provider and Employer**

May 18, 2010

United States
Department of
Agriculture

Farm and Foreign
Agricultural
Services

Farm
Service
Agency

Kentucky State
FSA Office
771 Corporate Dr.
Ste. 100
Lexington, KY 40503

Phone: 859-224-7601
Fax: 859-224-7691

Website:
www.fsa.usda.gov/ky

Corey Lea
2307 New Cut Rd
Alverton, Ky 42122

Re: FOIA dated May 5, 2010

Dear Mr. Lea:

This responds to your Freedom of Information Act (FOIA) request dated
May 5, 2010 and assigned control number 21-000-2010-000018.
Please reference this control number in any future communication with
our office about your request.

In response to your request the following determinations have been
made:

   1. Protective Advances. Protective advances must constitute a debt
of the borrower to the lender and be secured by the security
instrument. Agency written authorization is required for protective
advances in accordance with the terms and amounts specified by 7
C.F.R. Part 762. Terms and amounts for PLP lenders are included in the
lender's Credit Management System.

Determination:  No responsive records

   2. Additional Loan or Advances. In cases of a line of credit, the
lender may make an emergency advance when a line of credit has
reached its ceiling and additional funds are needed to prevent an
imminent loss of crops or livestock that would take place if the
emergency advance were not made. The lender must provide Agency
with an analysis as required by Agency regulations.

Determination:  No responsive records

   3. Future Recovery. After a loan has been liquidated and a final loss
claim has been paid by the Agency, any future funds which may be
recovered from the borrower by the lender, will be pro-rated between
the Agency and the lender.

Determination:  No responsive records

An Equal Opportunity Provider and Employer

4.    Bankruptcy. The lender is responsible for protecting the guaranteed loan debt and all collateral securing the loan in bankruptcy proceedings. Loss payments on bankruptcy cases will be processed according to the terms described in Agency regulations.

Determination:  No responsive records

5.    Liquidation. Liquidations must receive prior Agency concurrence when required by regulations.

Determination: No responsive records

6. Loss Claims. An estimated loss claim must be submitted by the lender no later than 150 days after the payment due date unless the account has been completely liquidated and then a final loss claim must be filed. Interest accrual will cease upon approval of the estimated loss and never later than 210 days from the payment due date. Estimated and final loss claims will be processed in accordance with the terms described in Agency regulations.

Determination: No responsive records

If you believe this determination is incorrect, you may appeal to the FSA Administrator.  The Appeals and Litigation Staff must receive your written appeal within forty-five (45) days of the date of this letter/email. Please include in the appeal a brief explanation of why you believe this decision is in error.  Be sure to include a copy of your initial request letter in your appeal package, and clearly mark both your letter and its envelope with the words "Freedom of Information Act Appeal."

Mail your appeal package to the following address:

Administrator
Attn: Appeals and Litigation Staff
United States Department of Agriculture
Farm Service Agency, Stop Code 0570
1400 Independence Avenue SW, Room 6722-S
Washington, DC 20250-0570

Please contact the Marcinda Kester, FOIA Officer if you have any questions concerning your FOIA request.

Sincerely,

John W. McCauley
State Executive Director

Par. 355

**Part 14   Liquidation**

**355   Liquidation Process (7 CFR 762.149)**

**A   Liquidation Process Overview**

After a lender has determined that a borrower's financial difficulties cannot be solved with any 1 or combination of the loan restructuring options, the lender must liquidate the loan.  All lenders are expected to proceed with liquidation in the following chronological order.

- The lender must give the borrower notice that the loan will be liquidated.

- The lender must accelerate the note.

- The lender must prepare a liquidation plan.  SEL and CLP lenders will provide FSA with a copy.

- The lender must submit an estimated loss claim with the liquidation plan * * * .

- The lender must liquidate the security.

- The lender must submit a final loss claim.

- The lender must remit future recoveries to FSA in proportion to the percentage of the guarantee.

Liquidation steps (maximum timeframes) are summarized as follows.

| All dates measured in calendar days after payment due date unless otherwise noted. | |
|---|---|
| **60\*** | Earliest date that lender can file to liquidate security |
| **90** | Lender gives notice to borrower and accelerates the loan or implements a loan restructuring plan |
| **120** | Lender must reach decision as to whether the account will be restructured or liquidated. |
| **150** | Liquidation plan and estimated loss claim must be submitted. |
| **164** | Estimated protective advances must be concurred with by FSA. |
| **170** | Liquidation plan must be approved by FSA. |
| **180** | Estimated loss claim must be approved by FSA. |
| **260** | Liquidation completed. |
| **290** | Final loss claim submitted. |
| **330\*\*** | FSA should approve or request modification of final loss claim. |
| \* 60 calendar days after disposition of IA eligibility issue (see paragraph 300). | |
| \*\* 40 calendar days after submission of final loss claim (see subparagraph 360 F). | |

Par. 355

**355  Liquidation Process (7 CFR 762.149) (Continued)**

**B  Earliest Date the Lender Can File to Liquidate Security**

The lender may not initiate foreclosure action on the loan until 60 calendar days after eligibility of the borrower to participate in the IA Program has been established by FSA. The lender and borrower must discuss IA Program eligibility at the default meeting. See paragraph 300 for more information on this meeting. If IA eligibility was waived in writing by the borrower, the lender may prepare to liquidate the loan immediately following receipt of the waiver.

It is the lender's prerogative to request IA on a loan, regardless of the borrower's desire or eligibility for the subsidy. However, it must be considered and documented in some fashion that it was rejected as an option. The authorized agency official shall remind the lender of this requirement if they attend the post default lender borrower meeting. Following this meeting or receipt of FSA-2248, the authorized agency official shall make a written entry in the running record of the borrower's FSA file as to the date that IA was considered and when the 60-calendar-day abeyance period ends.

**C  FSA-2248 Is Submitted**

FSA-2248 must be submitted following the lender-borrower default meeting and every
*−60 calendar days thereafter. The initial FSA-2248 will notify FSA that the borrower is in default and if IA was considered as an option to correct the default. Subsequent FSA-2248 will comment on the progress of liquidation and identify any problems the lender is−* having or may have in completing the liquidation in a timely manner.

If FSA-2248 is not received as required, the authorized agency official shall contact the lender, inquire as to the status of the account and request that an accurate report be provided. If necessary, this contact should be followed up with a letter, and if the authorized agency official feels it is necessary, a copy provided to SED. Interest that accrues during unnecessary delays will not be paid as part of a loss claim. SED and DD shall monitor
*−guaranteed loan delinquency reports to ensure that liquidating accounts are being monitored and FSA-2248 are being filed timely.−*

Case 3:15-cv-00595  Document 13  Filed 09/08/15  Page 28 of 48 PageID #: 113

355   **Liquidation Process (7 CFR 762.149) (Continued)**

**D   Decision to Liquidate Must Be Reached or a Loan Restructuring Plan Must Be Implemented**

Sometime between the date that the borrower's payment was due but not paid and 45 calendar days thereafter, the lender is expected to notify the borrower of the default and meet with the borrower to discuss solutions.  Within 75 calendar days of this meeting (or unsuccessful attempts to meet) the account should be paid current or restructured.  If a solution that requires more than 75 calendar days (90 calendar days after default) is agreed to, the reasons should be indicated on FSA-2248.  The authorized agency official shall review FSA-2248 and depending on what the lender's plans are, concur with the lender's plan, request a restructuring plan, request a liquidation plan, or mark the file for a follow up action as of the date the account is supposed to be paid current.

**E   Liquidation Plan and Estimated Loss Claim Must Be Submitted**

*—**Within 150 days after the payment due date, all lenders will prepare a liquidation plan.  Standard eligible and CLP lenders will submit a written liquidation plan to the Agency** (see paragraph 358).  The authorized agency official shall review the lender's estimates of timeframes and, based on their knowledge of the case and similar cases in their area, advise the lender of any concerns.  **An estimated loss claim must be filed no later than 150 days past the payment due date unless the account has been completely liquidated and then a final loss claim must be filed** (see paragraph 359).  **PLP lenders will submit a liquidation plan as required by their lender's agreement.**

FSA will not pay interest beyond 210 calendar days from the payment due date.  If the lender estimates that there will be no loss after considering the costs of liquidation, an estimated loss of zero will be submitted within 150 calendar days of the payment due date.  See subparagraph 360 F for information about additional interest that may be paid in some Chapter 7 Bankruptcy cases and when State redemption rights delay the sale of the property.  See subparagraph 359 A for information on filing estimated loss claims.—*

Case 3:15-cv-00595   Document 13   Filed 09/08/15   Page 29 of 48 PageID #: 114

Par. 355

**355   Liquidation Process (7 CFR 762.149) (Continued)**

**F   Liquidation Plan Is Approved or Rejected by FSA**

When the decision has been made to liquidate, a liquidation plan is required to be submitted by a CLP lender or SEL in all cases, including where all of the security has been sold, the borrower is liquidating voluntarily, or when no loss is expected.  FSA shall review a lender's liquidation plan and either approve it or request modifications within 20 calendar days after it is received.  See subparagraph 358 F.

**G   Estimated Loss Claim Is Approved by FSA or Modified by Lender**

\*--When an estimated loss claim is submitted, it may be reviewed and approved separately--\* from the liquidation plan.  FSA shall respond in writing within 30 calendar days of the receipt of the lender's estimated loss claim.  If FSA wants to dispute the estimated loss claim, FSA will resolve their differences with the lender before this 30-calendar-day deadline.  See subparagraph 359 F.

SED shall determine the level of review to be conducted on each estimated loss claim.  Estimated loss claims submitted by PLP lenders will be reviewed only for the accuracy of FSA-2254 and any mathematical calculations.  Lenders will reimburse FSA for any overpayments on estimated loss claims at the time of a final loss, plus interest, at the note rate.

**H   Liquidate**

Liquidation is expected to be completed within 230 calendar days after the borrower was declared in default, unless otherwise approved in the liquidation plan.

**I   Final Loss Claim Is Submitted**

**Lenders may submit a final loss claim when the security has been liquidated and all proceeds have been received and applied to the account.**  See paragraph 360.

A final loss claim should be submitted within 30 calendar days of the completion of liquidation or within 260 calendar days after the borrower was declared in default, unless an extension of this period is granted.  The authorized agency official shall document the request for an extension and approve it or reject it as soon as practical.

The authorized agency official shall monitor liquidations and request a loss claim when they are aware that an account has been liquidated.  A final loss claim will be reduced if there are unjustified delays in liquidation or submission of a claim.  If the account is paid in full, FSA-2248 and FSA-2241 shall be input indicating that the loan is paid and the guarantee terminated.

**356    Mediation (7 CFR 762.149(a))**

### A    Mediation Requirements

**When it has been determined that a default cannot be cured through any of the servicing options available or if the lender does not wish to utilize any of the authorities provided in this part, the lender must:**

- **participate in mediation according to the rules and regulations of any State which has a mandatory farmer-creditor mediation program**

- **consider private mediation services in those states which do not have a mandatory farmer-creditor mediation program**

- **not agree to any proposals to rewrite the terms of a guaranteed loan which do not comply with this part.**

**Any agreements reached as a result of mediation involving defaults and or loan restructuring must have written concurrence from the Agency before they are implemented.**

If requested by the lender, FSA may participate in mediation to provide guidance on FSA regulations and guidelines.  However, the FSA representative may not concur on any restructuring plans that require FSA approval during a mediation meeting.  Restructuring plans developed during mediation that require FSA approval must be submitted to the local credit office according to Part 12.

Though not indicated in the liquidation time line, the mediation process should begin immediately following a lender's decision to liquidate a loan.  If the borrower fails to attend the default meeting required by paragraph 300, or if this meeting does not result in a plan for restructuring, then the lender should notify the borrower of the results of the meeting and their intention to proceed with liquidation of the account.  This notification should include an offer of mediation, an explanation of what mediation may accomplish, and instructions on how and where a mediation hearing may be requested.  This information is available from FSA State Offices or the State Department of Agriculture of the State in which the borrower is located.

### B    Lender Participation in Mediation

If SED determines that a lender's failure to participate in a mediation program caused a loss to the Government, a final loss claim payment may be reduced or denied.  SEL lenders who consistently fail to participate in mediation may jeopardize consideration for CLP or PLP status.

**357 Foreclosure and Acceleration (7 CFR 762.149)**

### A  Overview

\* \* \* The lender must initiate foreclosure action and accelerate the loan.  The lender may not initiate foreclosure action on the loan until 60 calendar days after eligibility of the borrower to participate in the IA Program has been established by FSA.  The lender may accelerate the loan before FSA approval of a liquidation plan.

### B  Borrower Files for Bankruptcy After Loan Note is Accelerated

If the borrower files bankruptcy after the loan note is accelerated, the lender suspends liquidation proceedings until 1 of the following actions:

- bankruptcy case is dismissed or closed

- order lifting automatic stay is obtained from the court

- \*--property is no longer property of the bankruptcy estate and the borrower has been--\* discharged (see Part 13).

**357    Foreclosure and Acceleration (7 CFR 762.149) (Continued)**

####    C  Acceleration

**If the borrower is not in bankruptcy, the lender shall send the borrower notice that the loan is in default and the entire debt has been determined due and payable immediately after other servicing options have been exhausted.**  Foreclosure proceedings commence once a loan is accelerated.

**The loan cannot be accelerated until after the borrower has been considered for Interest Assistance and the conclusion of mandatory mediation in accordance with § 762.149(a) (paragraph 356).**

**The lender will submit a copy of the acceleration notice or other document to the Agency.**

The lender accelerates a loan note by giving the borrower written notice by certified mail that the loan is in default and the entire debt is due and payable.  The lender must make a copy of the acceleration notice and attach it to the first FSA-2248 that is submitted following note acceleration.  Once a note is accelerated, the borrower will typically have 30 calendar days from the date of acceleration to make payment in full by cash, transfer, sale of property, or voluntary conveyance.  If the borrower fails to satisfy the account in the period specified in the notice, the foreclosure process will continue until the loan security is liquidated.

Once the note is accelerated all other servicing procedures other than liquidation and its associated actions, such as making protective advances, cease.

Par. 357

**357   Foreclosure and Acceleration (7 CFR 762.149) (Continued)**

**D   Foreclosure**

**The lender is responsible for determining who the necessary parties are to any foreclosure action or who should be named on a deed of conveyance taken in lieu of foreclosure.**

**When the property is liquidated, the lender will apply the net proceeds to the guaranteed loan debt.**

**When it is necessary to enter a bid at a foreclosure sale, the lender may bid the amount that it determines is reasonable to protect its and the Agency's interest.  At a minimum, the lender will bid the lesser of the net recovery value or the unpaid guaranteed loan balance.**

Foreclosure refers to the comprehensive process of preparing for and selling the collateral that secures a loan that is being liquidated.  Therefore, the foreclosure process begins once the lender decides to accelerate the loan in preparation for liquidation and ends once the loan's security is liquidated.

Case 3:15-cv-00595   Document 13   Filed 09/08/15   Page 34 of 48 PageID #: 119

**358   Lender Liquidation Plan (7 CFR 762.149(b))**

**A   Overview**

\*--All lenders must prepare a liquidation plan with 150 calendar days of the payment due date. SEL and CLP lenders must submit a liquidation plan. If applicable, the lender should submit a request for IA reimbursement to FSA within 30 calendar days. The liquidation plan--\* must include a schedule of all projected liquidation activities, and a complete inventory of the security to be sold.

**B   General Requirements**

**If a default cannot be cured after considering servicing options and mediation, the lender will proceed with liquidation of the collateral in accordance with the following.**

**\*--Within 150 days after the payment due date, all lenders will prepare a liquidation plan. Standard eligible and CLP lenders will submit a written liquidation plan to the Agency which includes:--\***

- **Current balance sheets from all liable parties or, if the parties are not cooperative, the best information available, or in liquidation bankruptcies, a copy of the bankruptcy schedules or discharge notice**

- **A proposed method of maximizing the collection of debt which includes specific plans to collect any remaining loan balances on the guaranteed loan after loan collateral has been liquidated, including possibilities for judgment**

  - **If the borrower has converted loan security, the lender will determine whether litigation is cost effective. The lender must address, in the liquidation plan, whether civil or criminal action will be pursued. If the lender does not pursue the recovery, the reason must be documented when an estimated loss claim is submitted (subparagraph 360 E).**

  - **Any proposal to release the borrower from liability will be addressed in the liquidation plan in accordance with § 762.146(c)(2) (paragraph 361).**

    **Note:** If according to paragraph 361 the release of liability can be approved, it will not be granted until either all of the collateral is voluntarily conveyed to the lender or it is liquidated.

*Exhibit 6*

*1 of 13*



United States
Department of
Agriculture

Office of the
Assistant Secretary
for Civil Rights

Office of Adjudication

100 Independence
Avenue SW

Washington, DC
1250

A.'R 2 9 2010

Mr. Corey Lea
2307 New Cut Road
Alvaton, Kentucky 42122

FOIA Number: 10-1514-R

Dear Mr. Lea:

This letter responds to your Freedom of Information Act (FOIA) request dated
March 3, 2010, and amendment dated March 25, 2010. You requested a copy of "the
entire case file for Corey Lea."

Complaint Number 08-1401 consists of 1,521 pages. Of these pages, we have
determined that 869 pages can be released in their entirety, and 31 pages have portions
withheld in part pursuant to Exemptions 6 and 7(C) of the FOIA. We have also
determined that 571 pages originated in the Farm Service Agency. Therefore, we are
forwarding these pages to the following office for further action

> Ms. Sue Ellen Sloca, National FOIA Officer
> U.S. Department of Agriculture
> Farm Service Agency
> National Freedom of Information & Privacy Act Unit
> 1400 Independence Avenue, SW, Room 3617-S
> Washington, DC 20250-0506
> Email:  FSA.FOIA@wdc.usda.gov

Please refer any questions concerning the status of this portion of your request to the
agency listed above.

Exemption 6 permits the Government to withhold all information about individuals in
"personnel and medical files and similar files," where the disclosure of such
information "would constitute a clearly unwarranted invasion of personal privacy."
Exemption 6 also involves a balancing of the public's interest in disclosure against the
individual's privacy interest.

Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), permits the Government to withhold
records or information compiled for law enforcement purposes, but only to the extent
that the production of such law enforcement records or information could reasonably

AN EQUAL OPPORTUNITY EMPLOYER

**Ellis, Lolita -USDA**

| | | | **FOIA/PA Request** |
|---|---|---|---|
| | | | Received in DAC: 3/25/10 |
| **From:** | Corey lea [cowtownfoundation@gmail.com] | | **Assigned Number:** 10-154-K |
| **Sent:** | Thursday, March 25, 2010 10:30 AM | | **Reply Due:** 4/22/10 |
| **To:** | Ellis, Lolita -USDA | | |
| **Subject:** | FOIA Amendment | | |

I am sending this correspondence in reference to a FOIA Request previousl submitted. I am looking for The entire case file for:

Corey Lea
2307 New Cut Rd.
Alvaton, Ky. 42122

I had previously requested just the report conducted by Shawntey Fox.

Sincerely,

Corey Lea

4/27/2010

**Ellis, Lolita -USDA**

From:    Corey lea [cowtownfoundation@gmail.com]
Sent:    Wednesday, March 03, 2010 10:27 AM
To:    usdafoia@da.usda.gov; Tangredi, Joseph; Ellis, Lolita -USDA; brian.garner@wdc.usda.gov;
litsa.marinos@wdc.usda.gov
Subject: FOIA Request

The Freedom of Information Act
5 U.S.C. § 552, As Amended By
Public Law No. 104-231, 110 Stat. 3048

Re: Corey Lea
2307 New Cut Rd.
Alvaton, Ky. 42122

March 3, 2010

I am requesting the report composed by Shawntey Fox from the Office OF Adjudication and
Compliance in regards to the discrimination complaint 08-1401. I am requesting this report in it's
entirety that include comparables used. These comparable can be minus the personal information, I'm
specifically looking for the methods used to determine value. I am requesting any final decision that has
been made by the office of Adjudication and Compliance.

I am also requesting any documentation done by the Civil Rights Office of the FSA in relation to Corey
Lea of the above mentioned address. I am specifically interested in all documentation provided to
Shawntey Fox for her report.

Sincerely,

Corey Lea

*[handwritten signature]* kg
5/18/10 (Received in PAS of)
(dropped off by L. Ellis)

4/27/2010

Page 2

be expected to constitute an unwarranted invasion of personal privacy. Therefore, we have determined that the names of those involved in the investigation must be withheld, pursuant to Exemptions 6 and 7(C).

This completes our response to your FOIA request. The FOIA provides you the right to appeal this determination. Any appeal must be made in writing to:

> Dr. Joe Leonard, Jr.
> *Assistant Secretary for Civil Rights*
> U.S. Department of Agriculture
> 1400 Independence Avenue, SW
> Room 212-A, Whitten Building
> Washington, DC 20250-0115

The appeal must be received within 45 days from the date of this letter. The term "FOIA APPEAL" should be placed in capital letters on the front of the envelope.

Sincerely,

Carl-Martin Ruiz
Director
Office of Adjudication

Enclosures



**United States Department of Justice**

Executive Office for United States Attorneys

---

Freedom of Information and Privacy Staff | *Suite 7300, Bicentennial Building* | *(202) 252-6020*
*600 E Street, N.W.* | *FAX (202) 252-6047*
*Washington, DC 20530*

Request Number: 10-1668

Requester: Corey Lea

Dear Mr. Lea: | **1 4** JUN **2010**

    We are currently searching for documents responsive to your FOIA/PA request, and we have reached the point in our search efforts where we can estimate the number of pages potentially responsive to your request. The Western District of Kentucky has informed us that they estimate approximately 1,800 pages of potentially responsive records have been located. We do not know at this time, prior to completing our search, how many total responsive pages would be found. Although not all of these pages are likely to be released to you, you should note that we charge $0.10 per page for duplication of documents that are released to you after the first 100 pages, which are free. Therefore it is clear that charges will exceed $25.

    In accordance with Federal Regulation 28 CFR 16.11(e), when a requester has been notified that estimated fees amount to more than $25.00, the request shall not be considered received and further work shall not be completed until the requester agrees to pay the anticipated fees. If you wish to reduce the amount of fees, you may reformulate your request. Records identified for release after processing will not be released until payment has been received.

    In order for your request to be processed, we must hear from you within 30 days of the date of this letter or we will close your request. Please complete the attached form and return to the above address. If you have any questions about this letter or the form to be completed, or if you wish to discuss the possible narrowing of your request you may call Attorney-Advisor Sean J. Vanek at 202-252-6027.

                      Sincerely,

                      William G. Stewart II
                      Assistant Director

Note: You may appeal this response by writing to the Office of Information Policy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington D.C. 20530-0001. Your letter must be received by that office within 60 days of the date of this letter.

**THIS IS NOT A BILL. DO NOT SEND MONEY!**

Requester: Corey Lea          Request Number: 10-1668

**CHOOSE ONE**

___Please do not search any longer. **I understand that I am entitled to the first 100 pages free.** If you have found releasable documents, send me the free documents and close my case.

___Please do not search any longer. I wish to withdraw my request.

___I agree to pay the search fee indicated above. **I understand that this payment is required even if no documents are located or released to me.** In the event that documents are located and released to me, I understand that I may be charged duplication fees in addition to search fees.

___I wish to *reformulate my request in an attempt to reduce search fees.* Please limit my request to the following documents, and notify me of any revised search fee amount._____

_____

_____

_____

_____

(Please note that a search for specific records may require more search time and fees).

___I agree to pay up to the following amount for search time._____
**I understand that this payment is required even if no documents are located or released to me.** In the event that documents are located and released to me, I understand that I may be charged duplication fees in addition to search fees.

_____          _____
Name                          Date

Please return to:

EOUSA
FOIA/PA
600 E. Street, N.W., Room 7300
Washington D.C., 20530



**U.S. Department ͗ Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 252-6020   FAX: 252-6047   (www.usdoj.gov/usao)*

Requester:   Corey Lea                                        Request Number:   10-1668

Subject of Request:   Authorization Documents

Dear Requester:

      Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices.

      To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

      The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act. 28 CFR § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a [  ] partial [  ] full denial.

      Enclosed please find:

                                           **2 7 AUG 2010**

_____ page(s) are being released in full (RIF);
_____ page(s) are being released in part (RIP);
 372\_\_\_\_\_ page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

      The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

    Section 552                                        Section 552a

| [  ] (b)(1) | [  ] (b)(4) | [  ] (b)(7)(B) |        [  ] (j)(2) |
|---|---|---|---|
| [  ] (b)(2) | [X] (b)(5) | [  ] (b)(7)(C) | [  ] (k)(2) |
| [  ] (b)(3) | [X] (b)(6) | [  ] (b)(7)(D) |        [  ] (k)(5) |
| _____ | [  ] (b)(7)(A) | [  ] (b)(7)(E) |        [  ] _____ |
| _____ | | [  ] (b)(7)(F) | |

    [  ] In addition, this office is withholding grand jury material which is retained in the District.

                                            (Page 1 of 2)
                                       Form No. 021- no fee - 3/10

[X]   A review of the material revealed:

[X]   Our office located records that originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** These records will be referred to the following component(s) listed for review and direct response to you:   USDA-Farm Service Agency

[  ]   There are public records which may be obtained from the clerk of the court or this office, upon specific request. If you wish to obtain a copy of these records, you must submit a new request. These records will be provided to you subject to copying fees.

[  ]   Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought. Each file was given a separate Request Number (listed below), for which you will receive a separate response:

_____

[X]   *See additional information attached.*

This is the final action on this above-numbered request. You may appeal this decision on this request by writing to the **Office of Information Policy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C.  20530-0001.** Both the letter and envelope should be marked "FOIA Appeal." *Your appeal must be received by OIP within 60 days from the date of this letter. If you are dissatisfied with the results of any such administrative* appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

Enclosure(s)

(Page 2 of 2)
Form No. 021 - no fee -3/10





**U.S. Departm     of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W., Suite 7300, Bicentennial Building*
*Washington, DC 20530-0001*
*(202) 252-6020   FAX: 252-6047   (www.usdoj.gov/usao)*

Requester:___Corey Lea_____Request Numbers: 10-3822; 10-3272____
Subject of Request:___Self (Correspondence) AUSA Spalding, Farmers Natl. Bank_____

Dear Requester:

      Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes a reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices.

      To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

      Please note. After a careful review of our files, we have determined that request number 10-3272 is a duplicate of 10-3822. Request number 10-3822 was opened as a result of a remand from the Office of Information Policy directing us to do a further search to determine if there were any documents that were responsive for release. In that search the district informed us that there was nothing different from what we advised you of in request number 10-1668.

      This is the final action on this above-numbered request. You may appeal this decision on this request by writing to the **Office of Information Policy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001**. Both the letter and envelope should be marked "FOIA Appeal." Your appeal must be received by OIP within 60 days from the date of this letter. If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

                                               1 9 NOV 2010

                    Sincerely,

                    William G. Stewart II
                    Assistant Director



**U.S. Department of Justice**

*Executive Office for United States Attorneys*
*Freedom of Information & Privacy Staff*
*600 E Street, N.W.,  Suite 7300, Bicentennial Building*
*Washington, DC  20530-0001*
*(202) 252-6020   FAX: 252-6047   (www.usdoj.gov/usao)*

Requester:   Corey Lea                                    Request Number:   10-845

Subject of Request:   Farmers National Bank Agreement

Dear Requester:

　　　Your request for records under the Freedom of Information Act/Privacy Act has been processed.  This letter constitutes a reply from the Executive Office for United States Attorneys, the official recordkeeper for all records located in this office and the various United States Attorneys' offices.  To provide the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

　　　All of the records you seek are being made available to you.  We have processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you.  **This letter is a full release of 2 pages.**

　　[  ]   A review of the material revealed:

　　[  ]   Our office located records that originated with another government component.
　　　　　**These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.**  These records will be referred to the component(s) listed for review and direct response to you:

　　[  ]   There are public records which may be obtained from the clerk of the court or this office, upon specific request.  If you wish to obtain a copy of these records, you must submit a new request.  These records will be provided to you subject to copying fees.

　　[  ]   Please note that your original letter was split into separate files ("requests"), for processing purposes, based on the nature of what you sought.  Each file was given a separate Request Number (listed below), for which you will receive a separate response:

　　[  ]   See additional information attached.

(Page 1 of 2)
No. 021A - no fee - 3/10

This is the final action on this above-numbered request.  You may appeal this decision on this request by writing to the **Office of Information Policy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C.  20530-0001**.  Both the letter and envelope should be marked "FOIA Appeal." Your request must be received by OIP within 60 days from the date of this letter. If you are dissatisfied with the results of any such administrative appeal, judicial review may thereafter be available in U.S. District Court, 28 C.F.R. § 16.9.

Sincerely,

William G. Stewart II
Assistant Director

(Page 2 of 2)
No. 021A - no fee - 3/10

CIVIL ACTION NO. 09-CI-0000227

**ENTERED**
**WARREN CIRCUIT COURT**
NOV 4 2009
PAT HOWELL GOAD, CLERK

WARRENN CIRCUIT COURT
DIVISION NO. I

FARMERS NATIONAL BANK

PLAINTIFF

vs.    **AGREED ORDER WAIVING ONE YEAR RIGHT OF REDEMPTION**
**IN FAVOR OF THE UNITED STATES OF AMERICA**
**ACTING THROUGH THE FARM SERVICE AGENCY,**
**UNITED STATES DEPARTMENT OF AGRICULTURE**

COREY LEA, INC., a Kentucky corporation
COREY LEA, individually
UNITED STATES OF AMERICA acting through
The Farm Service Agency, United States Department of Agriculture
84 LUMBER CO., a Pennsylvania Limited Partnership
TONY CARDWELL dba CARDWELL DRYWALL
INDEPENDENCE BANK

DEFENDANTS

This matter having come before the Court upon agreement of the Plaintiff, Farmers National

Bank and the Defendant, United States of America acting through the Farm Service Agency, United

States Department of Agriculture; and the Judgment entered on October 5, 2009 in this case having

provided for a one year right of redemption in favor of the United States of America; and this Court

having directed the Master Commissioner to sell the subject property in conjunction with Top Dollar

Real Estate and Auction Company in an effort to obtain the highest and best price for the property,

and the United States of America acting through the Farm Service Agency, United States Department

of Agriculture having agreed to waive its one year right of redemption;

IT IS HEREBY ORDERED, by agreement, that the Judgment entered on October 5, 2009 is

amended and item 13 is amended to reflect that the sale of the property shall not be subject to the

right of redemption arising under 28 U.S.C. § 2410 (c).

This __3__ day of _November_, 2009.

JUDGE, WARREN CIRCUIT COURT, DIV. NO. I

APR-23-2010 FRI 11:28 AM US ATTORNEY WDKY-10TH FL    FAX NO. 502 582 5097      P. 07

HAVE SEEN AND AGREED:

LARRY F. HINTON, Attorney for
  Farmers National Bank
REYNOLDS, JOHNSTON, HINTON
  & PEPPER, LLP
310 East 11th Avenue
Post Office Box 4000
Bowling Green, KY 42102-4000


MICHAEL F. SPALDING
United States Attorney's Office
Western District of Kentucky
10th Floor, Bank of Louisville Building,
510 West Broadway
Louisville, KY 40202

Clerk Send Copies to:
  ✓  Larry F. Hinton
  ✓  Michael F. Spalding
  ────David T. Broderick────
  ✓  Corey Lea
  ✓  Corey Lea, Inc.
  ✓  Mark Filip
  ✓  84 Lumber Co.
  ✓  Top Dollar Realty & Auction Co.

        This communication is an attempt to collect a debt. Any information obtained may be used for that purpose.